[NOTE. Subsequently this cause was heard on a motion to show cause why four executions, in favor of Muncaster against Mason and Jones, should not be quashed, because issued more than a year and a day after judgment. The court refused to quash the executions. Case No. 9,920.
[The case again came before this court upon a motion to quash two writs of fieri facias in favor of Muncaster against Mason and Jones which had been issued upon the mandate of the supreme court, affirming the decree in this case. The motion was denied. Id. 9,248.]

## Case No. 9,248.

### MASON v. MUNCASTER.

[3 Cranch, C. C. 403.] [1]

Circuit Court, District of Columbia. Dec. Term, 1828.

DAMAGES—ON DISSOLUTION OF INJUNCTION — CAPIAS—POUNDAGE FEES—LEVY—GOODS SOLD.

1. Upon the dissolution of an injunction to stay proceedings on a judgment of the circuit court of the District of Columbia, damages at the rate of ten per cent. per annum must be awarded, unless it be a bill to obtain a discovery, or some part of the judgment remain enjoined.

2. The plaintiff in a ca. sa. is liable to the marshal for his poundage as soon as he has taken the body of the defendant in execution on that writ.

3. The plaintiff in a fi. fa. is also liable to the marshal for his whole poundage on the debt, if he levy goods to the value of the debt, whether they be sold or not. If sold, and they produce

¹ [Reported by Hon. William Cranch, Chief Judge.]

less than the debt, he can claim poundage only on the amount made.

4. The original defendant is not liable in any form of action to the marshal; nor to the original plaintiff for the poundage; nor is he or his property liable for poundage, unless the judgment be for a sum larger than the debt due from the defendant, to be released on payment of the amount really due, with costs; for the marshal cannot, on a fi. fa. make more than the amount of the judgment; nor can he detain the debtor upon a ca. sa. for more than that amount.

5. If the marshal has not returned the fi. fa. he may proceed to execute it for his poundage.

The injunction heretofore granted in this case to stay proceedings upon two judgments at law, obtained in this court by Muncaster against Mason, having been dissolved, two writs of fieri facias were issued and levied upon the land of Mr. Mason, in the county of Alexandria, returnable to December term, 1824, but not returned, the sale of the land having been postponed by consent of the parties.

Mr. Key, for defendant Mason, moved the court to quash these writs, because they included damages, at the rate of ten per cent. per annum from the time of granting to the time of dissolving the injunction according to the act of congress of the 24th of June, 1812, § 7 [2 Stat. 756], and contended that the bill was for discovery, and therefore the damages should be at the rate of six per cent. per annum only.

Another question was also submitted to the court, namely, whether Mr. Mason was liable to the marshal for his poundage fee for levying the executions on the land.

Mr. Key also contended, that the levy was invalid for want of a sufficiently certain description of the lands levied upon.

E. J. Lee, contrà. The bill was not to "obtain a discovery," but was an ordinary bill for an injunction grounded upon facts which it averred the plaintiff could prove.

CRANCH, Chief Judge (nem. con.). This case comes now before this court upon a motion to quash two writs of fi. fa. in favor of John Muncaster against John Mason and Mr. Jones, which were issued from this court on the 17th of May, 1824, returnable to December term, 1824, and which the marshal had levied on certain real estate of the defendant Mason, in the county of Alexandria, but which executions have not been returned; the sale of the land having been postponed at the request of Mr. Mason, and with the consent of the plaintiffs at law. These executions were issued upon the mandate of the supreme court of the United States, affirming the decree of this court, which dissolved the injunction and dismissed the bill of Mason v. Muncaster [Case No. 9,247]. One of these executions was for $4,000 damages and costs; and by the clerk's indorsement thereon, the damages were to be released on payment of $2,000 with interest from the 4th of January, 1819, to April 6, 1821, at the rate of six per

cent. per annum, and from that date to May 12, 1824, at the rate of ten per cent. per annum, and from that time at the rate of six per cent. per annum, till paid, and costs. The other was for $360 damages and like interest. It was agreed by the parties in these cases, "that the court, upon a case stated shall say whether the plaintiff, John Muncaster, was, on the dissolution of the injunction of John Mason against him and others, entitled to the ten per cent. claimed for the delay occasioned by the said injunction; and so too, whether the marshal has a legal claim on the said John Muncaster for poundage fees on levying the said executions on the land of the said John Mason."

The first question is, whether the plaintiff at law is entitled to the ten per cent. for delay occasioned by the injunction? By the 7th section of the act of congress of the 24th of June, 1812, it is enacted, "That when any injunction shall hereafter be obtained to stay proceedings on any judgment rendered for money in the circuit court of the said district, and such injunction shall be dissolved wholly or in part, damages, at the rate of ten per cent. per annum from the time the injunction shall be awarded, until dissolution, shall be paid by the party on whose behalf such injunction was obtained, on such sum as appears to be due, including costs; and execution on the judgment enjoined, shall be issued for the same;" "provided that when the injunction shall be granted to obtain a discovery, or any part of the judgment shall remain enjoined, the court may, if it appear just, direct that such damages shall not be paid, or only such certain portion thereof as they may deem expedient." The statute is peremptory, that the ten per cent. "shall be" paid, unless the case be within the proviso. As no part of the judgment remained enjoined, the only question is, whether the "injunction" was "granted to obtain a discovery." That it was not technically a bill of discovery, is evident. It does not suggest the want of evidence of any kind. nor does it aver any material fact to be in the knowledge, much less in the exclusive knowledge, of the defendant. The object of the injunction was to stay the execution until the court should hear and decide upon the new facts which the defendant had discovered since giving his notes for the purchase-money. These facts were: 1st. That there is still remaining in that part of the parish of Fairfax, which continues in the county of Fairfax, a church belonging to the parish, and a worshipping congregation of Episcopalians, who claim all the rights of the parish, and consequently, a title to the land. 2d. That the legal title is still outstanding in the heirs of Daniel Jennings, who are not estopped by the deed of their ancestor, "inasmuch as the fact may be made clear and notorious, that there was no regular and legal succession, no right of representation, no identity of character and capacities between the said complainants and the original parish of Fairfax." 3d. That those heirs reside in distant states, so that they are not, and cannot be barred by the statute of limitations.

In the complainant's amended bill, filed after the injunction was awarded, he says he "hath discovered other matters and considerations, proper, as he is advised, to be suggested in support of his said original complaint." The new facts, alleged in this amended bill, are: 1. "That there is a regularly elected vestry and wardens of the said Falls Church, having all the powers that the said Alexandria Church can pretend to; and that D. D., W. B. R., &c. &c. are the vestry: and that B. G. T. and D. F. D., are the churchwardens thereof, duly elected by the said vestry; so-that your orator is fully enabled to show to your honors, not only that such outstanding title might exist," "but that such title now actually resides in competent parties, in esse who have never relinquished, but on the contrary do assert the same." 2. "That your orator, upon inquiring into the nature and occupancy of the said glebe, has been most credibly informed. and does verily believe, that it was always considered and used as the common property, and to the common benefit of both churches in the said parish. That until the mansion house on the said glebe was destroyed, the rector of the whole parish, having charge of both the churches, resided therein, and cultivated the glebe, and that after his removal to Alexandria, the rents of the said glebe were applied equally to the use and benefit of both the said churches." 3. "That the grantor, D. Jennings, is dead, and has left as his representatives, two sons, Daniel Jennings, and Owen Jennings, residing, as your orator is informed and believes, one in the state of Kentucky, and the other in Louisiana." There is no averment that the complainant is unable to prove any of these facts, nor that they were known to the defendant. There is a general prayer, that the defendant may answer the allegations of the bill, but there are no particular interrogatories. If this be an injunction granted "to obtain a discovery," it would be very difficult to conceive of one which is not. It seems to us to be only the ordinary and common case of an injunction to stay execution. The rule adopted by the act of congress in such cases is, that the ten per cent. must be paid; the exception applies only to extraordinary cases.

The second question is, whether the marshal has a legal claim for poundage on levying the executions on the land of the complainant? It is understood that the land has not been sold, but was liable to be sold, and had been advertised; but that the sale has been postponed by the agreement of the parties, without prejudice to the rights of the marshal. One objection to the claim of poundage is, that there was no valid levy, because the land is not sufficiently described. The executions are not yet returned, and are still in the hands of the marshal;

but they are exhibited with the schedule and appraisement; by which it appears that the beginning of the tract is at the end of the lower line of Patterson's land, where it touches the river Potomac. There is nothing to show that the other boundaries are not all correct. Apparently they are sufficiently certain. We cannot say that the levy is invalid for want of certainty. The question then is, whether the marshal is entitled to his poundage fee for levying on land which is not sold? By the act of congress of the 27th of February, 1801, § 9 (2 Stat. 103), the marshal was entitled to receive the same fees, perquisites, and emoluments which were by law allowed to the marshal of the United States for the district of Maryland. By the act of March 3, 1807 (2 Stat. 430), the marshal, for services not enumerated in that or some other act of congress, is entitled, if performed in the county of Washington, to such fees as were, on the first Monday of December, 1800, allowed by the laws of Maryland to a sheriff for like services; if performed in the county of Alexandria, to such fees as were then, by the laws of Virginia, allowed to a sheriff of a county in Virginia.

The poundage fee is not expressly given, or regulated by any act of congress. By the statute of Westm. I, c. 26, no officer shall take any reward to do his office, but of the king; and by 29 Eliz. c. 4, no sheriff shall 'receive or take of any person for serving an execution on the body, lands, goods, or chattels of any person, more or other consideration or recompense, than twelve pence of and for every twenty shillings that he shall levy or extend and deliver in execution, or take the body in execution for, by virtue and force of any such extent or execution." That act does not contain the word poundage. The 3 Geo. I. c. 15, § 14, uses the word "poundage," and calls it "poundage, allowance, or reward." By the 16th section of the same act, it is enacted, "That it shall not be lawful for any sheriff, by reason or color of office, or by reason or color of executing any writ or writs of habere facias possessionem aut seisinam, to ask, demand, or receive any other or greater consideration, fee, gratuity, or reward, than twelve pence of every twenty shillings of the yearly value." And by the 17th section, it is enacted, "that poundage shall in no case be demanded or taken upon executing any writ of ca. sa., or upon charging any person in execution by virtue of such writ, for any greater sum than the real debt bona fide due and claimed by the plaintiff," under the penalty of treble damages to the party aggrieved; but the statute does not say whether the party aggrieved be the plaintiff or the defendant, nor which of them is bound to pay the poundage. By the statute of 8 Geo. I. c. 25, § 3, it appears that the halfpenny in the pound upon recognizances was to be paid by the prosecutor; and by the 5th section, the sheriff upon such recognizances is to take only the same fees as are

appointed by the statute of 3 Geo. I. By the act of Maryland of 12th of October, 1753, c. 22, it is enacted, "that no officer, by reason or color of his office, shall have, receive, or take of any person any other or greater fees than by this act are allowed;" "to a sheriff serving an attachment or execution, 7 lbs. of tobacco," &c. The Maryland act of 1779 (chapter 25) gives "to the sheriff the same fees on a fieri facias, or replevin, as upon attachments;" and "for all goods and chattels which he shall attach and take into his possession, or wherewith he shall be chargeable, the same fees as on an execution." And by section 5, "on the service of any execution for money or tobacco, the sheriff, for the service of the same, shall charge and receive, on the same at the rate of 10 per centum on the first £5, &c. and 5 per centum for the residue; and no sheriff shall be chargeable in any action of escape for more than the sum of money really due, or indorsed to be received on the execution in discharge thereof." It does not clearly appear by any of these statutes who is in the first place liable to the marshal for his poundage, if the defendant be taken on a ca. sa.—the plaintiff or the defendant.

The case of Les Viscounts De London v. Michell (Anno 1616) 1 Rolle, 404, was an action of debt by the sheriff against the plaintiff in the execution, for his poundage fees upon a ca. sa. Lord Coke said: "If he has not an action of debt he has no remedy; and, therefore, forasmuch as the words are that he shall have, receive, and take, this makes it a duty in him, and so the action lies; quod fuit concessum per curiam." The case of Welden v. Vesey, Poph. 173, was debt by the sheriff against the creditor for £7 0s. 6d. for poundage on £181, for which the debtor was taken on a ca. sa. It was decided that the sheriff should have 5 per centum on the first £100, and 2½ on the residue; and Whitlock, J., was of opinion that the sheriff may refuse to do execution until the levying money be paid to him; but that point was not decided. In the following cases the sheriff recovered his poundage against the plaintiff: Brockwell v. Lock, 1 Salk. 331; Peacock v. Harris, Id. 331; Jayson v. Rash, Id. 209; Lyster v. Bromley, Cro. Car. 286; Earl v. Plummer, 12 Mod. 124; Tyson v. Paske, 1 Salk. 333; Pope v. Hayman, Holt, 317; Suliard v. Stamp, Moore, 468; Gurney and Some's Case, Cro. Eliz. 335. In all these cases the action was against the plaintiff in the execution; and there is no case in which the marshal or the sheriff brought his action for poundage against the original debtor in the execution. In Earl v. Plummer, the action was brought by the sheriff for his poundage on executing an erroneous writ, and the court said "that if the party himself will take out such an erroneous writ, he shall not, under pretence thereof, cheat the sheriff of his fees." Woodgate v. Knatchbull, 2 Term R. 148, was an action upon the case under the 29 Eliz. c. 4, by the

defendant in a fi. fa. against the sheriff for damages, for taking more than his poundage, for levying the fi. fa. Verdict for the plaintiff, £54 14s. A rule was granted to show cause why the verdict should not be set aside. The counsel, in arguing in support of the rule, said: "The mischief intended to be remedied by the act of Elizabeth, was the negligence of the sheriffs in executing process; persons who had recovered judgments being obliged to pay money to sheriffs to induce them to do their duty properly in levying the sums recovered. This was to be remedied by allowing the sheriff so much in the pound for the sum levied, as a stimulus to him: but to prevent him from charging the plaintiffs in the original suits with more than was allowed, the act gave the two remedies therein specified. They, therefore, were the only persons intended to be benefited by such pecuniary compensations, and not the defendants." Buller, J., says: "If the plaintiff choose to have an auction, he must pay the expenses out of his own debt to be levied; for there is no color to charge the defendant with it. The sheriff can only levy on the defendant that sum which is given by the judgment of the court." The judgment was for £200; but the fi. fa. was indorsed to levy £116, besides the costs of levying and the sheriff's fees. Buller, J., further said: "Then the only remaining question is, whether, in this case, it appears that the plaintiff is the party grieved. The first execution was what struck me as a ground for this doubt. The judgment there was for £200. The sheriff was at liberty by the judgment of this court to raise £200, but no more; and the expenses of levying must have been paid out of the debt. For in actions on simple contract, and judgment for a debt certain, the expenses of levying must be paid by the plaintiff, and not by the defendant; so that if the sheriff overcharge, the plaintiff is the sufferer. But if the judgment be for a penalty, the plaintiff has a right to receive the whole of his debt, independent of the expenses of the execution; and in those cases the defendant is the party injured by the sheriff's taking more than he ought." Grose, J., said: "At common law, no fee whatever was allowed to the sheriff; then if he be entitled to receive any, it must be by act of parliament. Now by looking into the act it appears clearly to have been the intention of the legislature that the sheriff should be paid in proportion to the sum levied, and that the sheriff should only levy what was really due." In Bonafous v. Walker, 2 Term R. 126, which was debt against the sheriff for an escape, the court decided that the plaintiff was entitled to recover against the sheriff all that he had a right to receive from the debtor who had escaped, including the poundage; and Buller, J., said: "For poundage is part of the debt, and the prisoner could not have been discharged out of execution without paying the poundage, and therefore if the plaintiff was

entitled to recover at all, he was entitled to recover the poundage as well as the debt." The case of Lake v. Turner, 4 Burrows, 1981, was debt by the sheriff for poundage on a ca. sa. in favor of the defendant, against Gibbs, who was arrested by the plaintiff. The only ground of defence was, that the ca. sa. was prosecuted at the instance and for the benefit of the king, who, not being named in the statute 29 Eliz. c. 4, is not bound by it, and therefore not liable for poundage. But this defence was, upon demurrer, adjudged bad, and the plaintiff had judgment. In Alchin v. Wells, 5 Term R. 470, it was held that if a sheriff levy under a fi. fa. he is entitled to poundage, though the parties compromise before he sells any of the defendant's goods; and if the sheriff, notwithstanding the compromise, satisfy himself for the poundage on the debt, the court will not rule him to return the writ. The case of Fisher v. Beatty, 3 Har. & McH. 148, was an action of replevin for goods taken by the defendant, as sheriff, to satisfy his poundage and other fees due on a writ of fi. fa. and a venditioni exponas, which last writ was countermanded before execution, and so returned by the sheriff before he took the goods in execution for his poundage. The general court decided that the sheriff could not execute, in that case, for his poundage, and that the defendant in an execution is not liable to the sheriff for his poundage. In the case of Maddox v. Cranch, 4 Har. & McH. 343, the general court decided that the plaintiff in an attachment was liable for poundage. In Stewart v. Dorsey, 3 Har. & McH. 401, the defendant had been taken in execution by the plaintiff (the sheriff) at the suit of the state, who agreed to release the defendant, on his paying all legal costs, and the defendant promised to pay the poundage to the sheriff, who thereupon discharged him. The court gave judgment for the sheriff in an action against the defendant on that promise. A manuscript report of Howard v. Justices of Levy Court of Ann Arundel, in 1805, was cited in this court in April, 1821, in the case of Ringgold v. Nicholls [Case No. 11,848], in which the general court, after full argument, decided that the defendant, and not the plaintiff, is liable to the sheriff for poundage; and upon that decision this court (Morsell, J., absent, and the other judges doubting,) decided the case of Ringgold v. Nicholls. Letters were read by the counsel in that cause, from Mr. Harris and Mr. Taney, stating that the question was still open in Maryland, and from Mr. Williams, that the court of appeals had decided that the plaintiff is not liable to the sheriff for poundage when the defendant is discharged under the insolvent law.

By the consideration of all these cases we are led to the conclusion: 1. That the plaintiff in a ca. sa. is liable to the marshal for his poundage as soon as he has taken the body of the defendant in execution upon that writ. 2. That the plaintiff in a fieri facias is

also liable to the marshal for his whole poundage on the debt, if he levy goods to the value of the debt, whether they be sold or not. If sold, and they produce less than the debt, he can claim poundage only on the amount made. 3. That the original defendant is not liable in any form of action, to the marshal, nor to the original plaintiff, for the poundage; nor is he or his property liable for poundage, unless the judgment be for a sum larger than the debt due from the original defendant, to be released on payment of the amount really due, with costs; for the marshal cannot, on a fi. fa., make more than the amount of the judgment, nor can he detain the debtor upon a ca. sa. for more than that amount. 4. That in the present case the marshal, not having returned the fi. fa., may proceed to execute it for his poundage; and in this way only has the marshal a legal claim on the defendant in this cause for the poundage, unless he shall have promised to pay it, upon good consideration.

See 2 Tidd (Phila. Ed. 1828) 1035, upon St. 43 Geo. III. c. 6, § 5.